STATE OF MARYLAND *v.* ONE 1979 PONTIAC
FIREBIRD ET AL.

[No. 1558, September Term, 1982.]

*Decided July 12, 1983.*

The cause was argued before LISS and BISHOP, JJ., and JOSEPH I. PINES, Associate Judge of the Eighth Judicial Circuit, specially assigned.

*Richard B. Rosenblatt, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Deborah K. Handel* and *Stephanie J. Lane, Assistant Attorneys General, Andrew L. Sonner, State's Attorney for*

*Montgomery County,* and *Bruce P. Sherman, Assistant State's Attorney for Montgomery County,* on the brief, for appellant.

*Thomas J. Malinowski,* with whom was *Joseph P. Malinowski* on the brief, for appellee.

Liss, J., delivered the opinion of the Court.

This controversy arises out of a petition for Motor Vehicle Forfeiture filed by the State of Maryland, the appellant herein, in the Circuit Court for Montgomery County on February 22, 1982, pursuant to Maryland Code (1957, 1980 Repl. Vol.) Art. 27, § 297. The vehicle involved is a 1979 Pontiac Firebird.

The State alleged in its petition that on September 1, 1981, approximately one pound of hashish, a controlled dangerous substance, was sold to undercover Montgomery County police officers in the vehicle in question. On September 9, 1981, approximately five pounds of hashish were sold to undercover Montgomery County police officers in the vehicle. Both of these transactions were alleged to be in violation of the Maryland Controlled Dangerous Substances Act, Maryland Code, Art. 27, §§ 276 through 302.

The State contended that the vehicle was used to transport, and to facilitate the transportation, sale, receipt, possession and concealment of controlled dangerous substances. It further stated that John Douglas Boise was charged in the Circuit Court for Montgomery County with violations of the Maryland Controlled Dangerous Substances Act. The State further stated that John Douglas Boise and James William Boise, his father, were, according to the records of the Motor Vehicles Administration, the owners of the vehicle sought to be forfeited and that the records indicated a lien on the vehicle held by the Equitable Trust Company.[1] The petition further recited that the Chief

---

1. The lien of Equitable Trust was satisfied during the pendency of these proceedings, and it is not a party to this controversy.

of the Montgomery Department of Police had personally reviewed the facts and circumstances of the seizure and had warranted in writing to the State's Attorney's Office that pursuant to the guidelines of Maryland Code, Art. 27, § 297 (f) forfeiture of the motor vehicle was warranted.

The case was heard on August 23, 1982. At trial the following additional facts were established by the testimony of several witnesses offered by the State and the defense. On the night of the arrest, John Boise was charged with a series of narcotic violations and was served with a seizure notice of the automobile which advised him that in the event of his conviction of the pending charges, the State would petition the court to forfeit the vehicle to the Montgomery County Government to be used as indicated in Maryland Code, Art. 27, § 301. This was the only notice received by John Boise until the State filed its petition for forfeiture. James Boise, the co-owner, knew of the seizure but was never notified by certified mail of the seizure or proposed forfeiture. The State proffered and the defense conceded that a certified mail notice was sent on February 11, 1982, to Mr. Malinowski, the attorney who represented John in the criminal case. Defense counsel proffered to the court and it was conceded by the State that Malinowski called the State's Attorney's Office and advised them that he did not represent the senior Boise and had no authority to accept service of the certified letter addressed to Boise as co-owner. Subsequent to the notice by Malinowski to the State's Attorney, he prepared an answer for both respondents and entered his appearance for each of them. The senior Boise admitted he knew that there had been some discussion between Malinowski and the State's Attorney's Office concerning the proposed forfeiture but contended counsel did not represent him until he was employed to prepare the answer to the State's petition for forfeiture which was after the attempted notification of the attorney by certified mail.

The trial court found that the State failed to comply with the notice requirement of Art. 27, § 297, subsection (h) and

ordered that the petition for motor vehicle forfeiture be denied. It is from that judgment that this appeal was filed. Appellant raises two issues to be determined by this Court:

1. Whether the trial court improperly denied the forfeiture petition on the ground that the State failed to give the certified mail notice required where they had actual notice and suffered no prejudice?

2. Whether the word "shall" as used in the statute is mandatory?

We shall consider both issues together.

The pertinent portions of Art. 27, § 297 (g) and (h) which are involved in this controversy provide as follows:

(g) *Same — Notice to Motor Vehicle Administrator; certifying name and address of owner.* — Upon the seizure of a motor vehicle and the recommendation for forfeiture, the State's attorney for the county or City of Baltimore where the seizure is made shall notify the Motor Vehicle Administrator by certified mail of the seizure and of the motor or vehicle identification number of the motor vehicle seized. The Administrator shall promptly certify to the State's attorney the name and address of the owner. The term "owner" in this subtitle includes a secured party as well as an owner, as those terms are defined in the Maryland Vehicle Law.

(h) *Same — Notice to Owner.* — The State's attorney for the county or Baltimore City where the seizure is made shall notify the owner of the motor vehicle by certified mail of the seizure and of the determination by the State's attorney of whether the owner knew or should have known that the motor vehicle was being, or was to be, used in violation of this subtitle.

The State argues in its appeal that while the facts reveal a technical violation of subsection (h), the Boises had actual

notice of the seizure and of the State's intention to petition for forfeiture. James Boise, the co-owner of the vehicle, testified he had never received a certified letter from the State concerning the car. He conceded that on September 9, 1981, he learned from his son that the car had been seized and that he knew in October, 1981 that Mr. Malinowski was talking with the State about the proposed forfeiture action but staunchly argued that Mr. Malinowski did not represent him until he signed the answer to the petition of forfeiture. John Boise never received a certified mail notice, the only notification furnished to him being that furnished by the police officer the night he was arrested.

Subsection (h) is that part of the forfeiture statute designed to ensure post-seizure due process protection to owners of automobiles subject to forfeitures. The State contends that statutory provisions designed to achieve that notice should be applied so as to effectuate that purpose and that technical violations should not defeat the action of forfeiture. The State cites in support of its position the language included in *Mullane v. Central Hanover Bank and Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L.Ed. 865 (1950), where the Court stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *See also Robinson v. Hanrahan,* 409 U.S. 38, 93 S.Ct. 30, 34 L.Ed.2d 47 (1972), applying *Mullane* in a forfeiture proceeding.

The practice of giving actual notice through an attorney has been approved in two cases. In *1st National Bank of Columbiana v. State,* 403 So.2d 258 (Ala. Civ. App. 1981), the court held that a bank lienholder had sufficient notice of forfeiture proceedings where it was undisputed that an attorney, who was *not* counsel to the bank, had informed a bank official of the seizure and after correspondence with the district attorney had advised the lienholder of the pendency of the action and to file a claim. Similarly, in *Matter of One*

*Cessna 206 Aircraft,* 577 P.2d 250 (Ariz. 1978), an attorney who had arranged the purchase of the aircraft for new owners was contacted by the State after the registered owner had informed it of the sale. He refused to reveal the identities of the new owners. No further efforts at notice were made by the State. Upon a subsequent motion to set aside the forfeiture it was held that the contact with the attorney satisfied the *Mullane* requirement that it be "reasonably certain" that those affected be informed by the chosen method of service. But we are not concerned with the due process requirements alone.

The Court of Appeals has stated the purpose of the enactment of Art. 27, § 297, in *Prince George's County v. One 1969 Opel,* 267 Md. 491, 298 A.2d 168 (1973):

> It is true, of course, as Judge Digges noted in *One 1967 Ford Mustang,* that the Legislature, by the enactment of Ch. 659 of the Laws of 1972, has spelled out in some detail standards, guidelines and methods of procedure to be applied and followed by the authorities in respect of the forfeiture of motor vehicles under § 297. [*Id.,* at 499-500].

The purpose of the establishment of the standards, guidelines and methods of procedure is to provide, after due notice has been given to the owner, a forum in which it can be established whether the vehicle seized was used to facilitate the transportation, sale and possession of controlled dangerous substances; that no statutory exceptions to the implementation of the forfeiture statute are applicable, and to ensure adherence to due process requirements. *State v. Greer,* 263 Md. 692, 284 A.2d 233 (1971).

The State would have us adopt the position that once it has been established that the owner or owners had actual notice of the seizure of a vehicle and of its proposed forfeiture, that a failure to give the notice preserved by Art. 27, § 297(h) would be harmless. We decline to do so. The failure to give the required statutory certified mail notice could cause every forfeiture action to degenerate into a testimonial

fire-fight between the parties as to whether actual notice was given, when it was given and in what form it was given. What is essentially a simple matter could and would become a complex evidentiary and legal question to add new burdens to our already overburdened courts. The Legislature has provided a simple directive to solve the problem by the adoption of the statute. It has indicated its intention that its directive be followed by including the word "shall" in the language of the statute. The use of "shall" in the context of this statute should be regarded as a direction from the Legislature that certain conduct is required. Ordinarily the word "shall" is mandatory and it is presumed that the Legislature used this word in its usual and natural meaning unless there is something in the legislation to indicate otherwise. *See Maryland Medical Service v. Carver,* 238 Md. 466, 209 A.2d 582 (1965).

The State's Attorney failed to give the required certified mail notice to John Boise; he sought to give notice to James Boise by notifying an attorney who promptly advised the State's Attorney that he did not represent James Boise. After receiving this information the State's Attorney made no further effort to comply with the requirements of Art. 27, § 297 (g) and (h). We agree with the trial judge that the failure to comply is not excused by the alleged actual notice furnished by the State in its petition of forfeiture. The Legislature spelled out what was required in order for the State to be entitled to a forfeiture and the requirements and guidelines must be followed.

*Judgment affirmed, costs to be paid by Montgomery County.*